| | |
|---|---|
| CLOIE TUCKER, | |
| Plaintiff | Civil Action No.: _____ |
| vs. | |
| JEFFERSON OPERATOR, LLC, d/b/a JEFFERSON CITY HEALTH AND REHAB; WILLIAM D. GRAY, JR.; and, NORTHPOINT SENIOR SERVICES, LLC d/b/a PRESTIGE HEALTHCARE, | Judges:_____ |
| Defendants. | (Jury Demand) |

## COMPLAINT

Comes the Plaintiff, CLOIE TUCKER (hereinafter "TUCKER" or "PLAINTIFF"), and sues the Defendants, JEFFERSON OPERATOR, LLC d/b/a JEFFERSON OPERATOR (hereinafter "JEFFERSON OPERATOR"), WILLIAM D. GRAY, JR. (hereinafter "GRAY"), and NORTHPOINT SENIOR SERVICES, LLC D/B/A PRESTIGE HEALTHCARE (hereinafter "NORTHPOINT"), as follows:

### I. PRELIMINARY STATEMENT

1. This action, as amended, arises from Defendant JEFFERSON OPERATOR and Defendant NORTHPOINT'S conduct toward Plaintiff in violation of the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304, the Tennessee common law for retaliatory discharge. Additionally, and in the alternative, the Plaintiff hereby alleges a cause of action against the Defendant GRAY,

- 1 -

individually, for aiding and abetting retaliatory discharge pursuant to the Restatement Second of Torts § 876(b).

## II. JURISDICTION

2. The matter in controversy involves questions of federal law, giving this Court original jurisdiction of this action pursuant to the provisions of 28 U.S.C. § 1331. Additionally, there is complete diversity jurisdiction between the parties and the matter in controversy exceeds $75,000.

3. The matter in controversy also involves ancillary claims that form part of the same case or controversy as that claim which is within the original jurisdiction of the Court. This Court has supplemental jurisdiction of such ancillary claims pursuant to the provisions of 28 U.S.C. §1367.

4. TUCKER was employed by JEFFERSON OPERATOR in Jefferson City, Tennessee. Venue is therefore proper with this Court pursuant to 28 U.S.C. § 1391.

## III. PARTIES

5. TUCKER is a citizen and resident of Hamblen County, State of Tennessee.

6. Defendant JEFFERSON OPERATOR is a foreign limited liability company organized and existing under the laws of the State of Delaware with a license to do business in the state of Tennessee. It has a principal address of 7400 New LaGrange Road, Louisville, TN 40222-4870. It may be served through its registered agent, National Corporate Research, Ltd, Inc., 992 Davidson Drive, Suite B, Nashville, TN 37205-1051.

7. Upon information and belief, Defendant GRAY is a resident of the State of Indiana. He serves in a role as Senior Vice-President of Human Resources for Defendant NORTHPOINT

and oversees human resources functions at six (6) nursing home facilities in the state of Tennessee including the Defendant JEFFERSON OPERATOR. He may be served via certified mail, return receipt at 116 Orchard Hills Drive, Apartment 347, Jeffersonville, Indiana 47130.

8. Defendant NORTHPOINT is a foreign limited liability company organized and existing under the laws of the State of Georgia. Upon information and belief, Defendant NORTHPOINT regularly conducts business in the state of Tennessee and serves as a management company to six (6) nursing home facilities in the state of Tennessee including the Defendant JEFFERSON OPERATOR. However, Defendant NORTHPOINT is not listed with the Tennessee Secretary of State as licensed to do business in the state. Defendant NORTHPOINT shares a principal address with Defendant JEFFERSON OPERATOR at 7400 New LaGrange Road, Louisville, KY 40222-4870 where it may be served via certified mail, return receipt.

9. The Plaintiff reserves the right to amend this Complaint with leave of court to name and/or substitute as defendants any other individuals or legal entities which may later be discovered to be responsible for the wrongful conduct alleged herein.

## IV. FACTS

10. Defendant JEFFERSON OPERATOR was an "employer" within the meaning of the FMLA, the TPPA, and Tennessee common law at all times relevant to this complaint.

11. Plaintiff was an "eligible employee" of Defendant JEFFERSON OPERATOR within the meaning of the FMLA.

12. Plaintiff was an "employee" within the meaning of the TPPA and Tennessee common law at all times relevant to this complaint.

13. Plaintiff was employed by Defendant JEFFERSON OPERATOR from on or about April 17, 2002, until her employment was involuntarily terminated on or about April 14, 2012. She was an at-will employee.

14. Defendant JEFFERSON OPERATOR is a nursing home facility.

15. Plaintiff was previously employed as a CNA until suffering a workers' compensation injury. She was employed as a "Scheduler" or "Staffing Coordinator" at the time her employment ended on or about April 14, 2012.

16. Upon information and belief, Defendant JEFFERSON OPERATOR and Defendant NORTHPOINT were and/or are a single or joint employer of Plaintiff, and/or an integrated enterprise having interrelated operations and/or common management and/or centralized accounting and payroll and/or common ownership and/or common principal place of business, and therefore should be aggregated for liability and damage purposes.

17. On or about February 22, 2012, the Plaintiff was approached by the Director of Nursing for Defendants, Karen Hamrick, and instructed to come into her office. Ms. Hamrick along with Ms. Tammy Colley were present in the office. Ms. Hamrick instructed the Plaintiff to make some changes to the charts of approximately three (3) patients. The Plaintiff informed both Ms. Hamrick and Ms. Colley that this was wrong. They replied that the Defendants did this every year to cover for "falls, labs, and state surveys". One of the specific requests was to change the weight of a patient on the charts.

18. The Plaintiff later went to inform the administrator of Defendant JEFFERSON OPERATOR, Mr. David Waldrop, of what had taken place. Mr. Waldrop accused the Plaintiff of lying.

19. Upon information and belief, Mr. Waldrop never investigated the Plaintiff's complaints. Instead, he instructed the Plaintiff that she needed to work this issue out with Ms. Hamrick.

20. On or about February 27, 2012, at approximately 6:30 a.m., Ms. Hamrick called the Plaintiff and asked her to meet her for breakfast that morning. During the telephone conversation, Ms. Hamrick stated that the Plaintiff was like a daughter to her and that she didn't want to lose that relationship. Ms. Hamrick further stated that it was her word against the Plaintiff's and that she just needed to move past it. The Plaintiff informed Ms. Hamrick that she could not look over what had happened and declined her invitation.

21. Shortly after her complaints, the Plaintiff began receiving write-ups and disciplinary action from Ms. Hamrick for false and/or trumped up reasons. The disciplinary records suddenly described the Plaintiff as a poor performer and disruptive employee despite the fact that she had just received a raise and "meets or exceeds expectations" on her 2012 evaluation approximately one (1) month before reporting Ms. Hamrick's conduct.

22. The Plaintiff received four (4) written "Performance Improvement Forms" from March 13, 2012 through April 2, 2012. On one (1) occasion the Plaintiff was even suspended without pay for two (2) days by Ms. Hamrick. This suspension was later overturned and she was awarded the pay from the Defendant GRAY. Upon information and belief, Defendant GRAY was a superior to both Waldrop and Hamrick.

23. In late March 2012 or early April 2012, the Plaintiff sought out the Defendant GRAY in light of the fact that Mr. Waldrop accused her of lying and failed to investigate her

complaints. Additionally, the Plaintiff informed Defendant GRAY that she felt she was being retaliated against for making complaints against Karen Hamrick for illegal activity.

24. Upon information and belief, the Defendant GRAY failed to perform an investigation into the Plaintiff's complaints, and instead, began negotiating to end the Plaintiff's employment with Defendants.

25. On or about April 3, 2012, the Defendant GRAY sent a proposed Separation Agreement stating that the Plaintiff's employment would be terminated for "lack of work" with the Defendants effective April 5, 2012, and she would receive a payment of $2,350.00 in exchange for her releasing all claims against the Defendants.

26. In addition to the problems the Plaintiff was experiencing with Ms. Hamrick and Mr. Waldrop, she was also helping care for her mother who was suffering from cancer throughout this time. The Plaintiff had previously informed Mr. Waldrop and Defendant Gray of her mother's condition and need to be with her during April 2012.

27. On or about April 10, 2012, Defendant GRAY pressed the Plaintiff about the proposed Separation Agreement in an email. The Plaintiff informed him that she was consulting with an attorney about the document and had been helping care for her sick mother.

28. On or about April 14, 2012, Defendant GRAY sent a subsequent Separation Agreement whereby he stated that the Plaintiff's employment would be terminated for "lack of work" and offered to up the cash payment to $4,000 in exchange for a release. In addition to the Separation Agreement, Defendant GRAY instructed the Plaintiff "You will not return to work, but have the keys dropped off at work."

29. On Sunday April 15, 2012, the Plaintiff sent two (2) follow-up emails to Defendant GRAY. The first at 3:02 p.m. states in relevant part "Mr. Gray I have read that as of the 14th I have been terminated. My keys will be dropped off at the front desk." The second email from the Plaintiff at 3:35 p.m. states, "In other words Mr. Gray. Me having. My write ups and a paid suspension is actuactually[sic] due to ilegal[sic] act reported by me to you and administration of your company. Thank you."

30. The Defendant GRAY replied with an email on April 15, 2012, at 7:26 p.m. in which he states that Plaintiff has "not been terminated due to any DISABILITY of any kind nor for lack of work. The facility has a significant amount of information to show your progressive unsatisfactory job performance." He goes on to state, "Absence[sic] of an executed separation agreement, your understanding of the reason for separation is incorrect, misconstrued and taken out of context. We are prepared to defend any and ALL claims with vigor."

31. At no time did Defendant GRAY inform the Plaintiff that she was not terminated or that he was recanting his previous statement to her that she was not to return to work. Instead, the Defendant GRAY simply changed the reason for the termination and threatened the Plaintiff that the company intended to "defend any and ALL claims with vigor."

32. Several days later, the Plaintiff received a Separation Notice filed with the Tennessee Department of Labor now stating that she had "quit" her position and was cited for "job abandonment" despite the fact that Defendant GRAY had informed her of her termination of employment on April 14, 2012, and instructed her not to return to work.

33. The Plaintiff subsequently received unemployment benefits.

## V. CAUSES OF ACTION

34. Paragraphs 1 through 34 are hereby realleged and incorporated in full by reference as if fully set forth herein.

### A. VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

35. Plaintiff was entitled to extended leave and/or intermittent leave to care for her mother who suffered from a serious health conditions under the FMLA, 29 C.F.R. § 825.201.

36. The Defendant JEFFERSON OPERATOR and Defendant NORTHPOINT were aware of the Plaintiff's mother's serious health condition so as to constitute notice to the employer as required under the FMLA for Plaintiff's entitlement to leave.

37. Defendant JEFFERSON OPERATOR and Defendant NORTHPOINT violated the FMLA by their failure to give notice to the Plaintiff of her rights under the FMLA as required by 29 C.F.R. § 825.208.

38. Defendant violated the FMLA by terminating the Plaintiff's employment in violation of 29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.220.

39. As the direct and proximate cause of Defendant's violations of the FMLA, the Plaintiff has suffered damages as set forth more fully herein.

### B. COMMON LAW RETALIATORY DISCHARGE

40. This cause of action is filed against Defendant JEFFERSON OPERATOR as an employer. It is also filed against Defendant NORTHPOINT to the extent it is deemed to have also been Plaintiff's *de facto* employer or an integrated enterprise with Defendant JEFFERSON OPERATOR.

- 8 -

Case 3:13-cv-00200-CLC-HBG   Document 1   Filed 04/12/13   Page 8 of 13   PageID #: 8

41. Based on the foregoing facts, Defendant JEFFERSON OPERATOR discharged Plaintiff, an at-will employee, in violation of Tennessee common law prohibiting retaliatory discharge. Upon information and belief, a substantial factor in Defendant JEFFERSON OPERATOR'S decision to discharge Plaintiff was her exercise of protected rights and her refusal to continue to participate in or remain silent about activities that she reasonably believed to constitute illegal activities and in violation of a statute and/or clear public policy, including but not limited to violations of the U.S. Department of Health and Human Services, Centers For Medicare and Medicaid Services Requirements for Long Term Care Facilities for residential assessments (See 42 C.F.R. 483.20) and the Tennessee Department of Health Board for Licensing Health Care Facilities Standards for Nursing Homes' regulations on proper recordkeeping and reports (See Rule 1200-8-6-.06 and 12099-8-6-.11).

42. As the direct and proximate cause of Defendant's conduct of retaliatory discharge, the Plaintiff has suffered damages as set forth more fully herein.

C. **TENNESSEE PUBLIC PROTECTION ACT**

43. This cause of action is filed against Defendant JEFFERSON OPERATOR as an employer. It is also filed against Defendant NORTHPOINT to the extent it is deemed to have also been Plaintiff's *de facto* employer, or an integrated enterprise with Defendant JEFFERSON OPERATOR.

44. Based on the foregoing facts, Defendant JEFFERSON OPERATOR has violated the TPPA by allowing its agents to fire the Plaintiff for her refusal to participate in, or to remain silent regarding the illegalities perpetrated by Defendant JEFFERSON OPERATOR and/or its agent, Karen Hamrick, in violation of including but not limited to the U.S. Department of Health

and Human Services, Centers For Medicare and Medicaid Services Requirements for Long Term Care Facilities for residential assessments (See 42 C.F.R. 483.20) and the Tennessee Department of Health Board for Licensing Health Care Facilities Standards for Nursing Homes' regulations on proper recordkeeping and reports (See Rule 1200-8-6-.06 and 12099-8-6-.11).

45. There is an exclusive causal relationship between the Plaintiff's refusal to participate in and/or remain silent about illegal activities and the termination of the Plaintiff's employment.

46. The reason given for the termination of the Plaintiff's employment by Defendant was pre-textual and untrue.

47. As the direct and proximate cause of Defendant's conduct of retaliatory discharge, the Plaintiff has suffered damages as set forth more fully herein.

### D. RESTATEMENT (SECOND) OF TORTS § 876(b)

48. This cause of action is filed, in the alternative, against Defendant GRAY individually to the extent that the Defendant JEFFERSON OPERATOR and Defendant NORTHPOINT are deemed not to be the Plaintiff's *de facto* employer or an integrated enterprise and to the extent that WILLIAM D. GRAY, JR. is not deemed a superior or supervisor of the Plaintiff so as to be individually liable for his actions aiding and abetting the Defendant JEFFERSON OPERATOR'S retaliatory discharge of the Plaintiff by encouraging and giving substantial assistance to the Defendant JEFFERSON OPERATOR in illegally terminating Plaintiff's employment.

49. As the direct and proximate cause of Defendant GRAY's conduct of aiding and abetting the retaliatory discharge of the Plaintiff, she has suffered damages as set forth more fully

herein.

## VI. DAMAGES

50. Paragraphs 1 through 49 are hereby realleged and incorporated in full by reference as if fully set forth herein.

51. As a direct and proximate result of each and every of the foregoing acts, conduct, and violations of statutory law by the Defendants as alleged herein, Plaintiff has suffered damages in an amount according to proof, including but not limited to, lost wages, lost benefits, lost interest on wages and benefits, inconvenience, embarrassment, humiliation, anguish, loss of lifetime earning capacity, and other incidental and consequential damages and expenses.

52. Upon information and belief, the wrongful acts of Defendant JEFFERSON OPERATOR and Defendant NORTHPOINT as alleged herein in violation of the TPPA and Tennessee common law were intentional and/or were done with knowing and/or reckless disregard of the Plaintiff's rights and the law of Tennessee. Plaintiff is therefore entitled to and seeks an award of punitive damages in an amount according to proof under the TPPA and Tennessee common law.

53. Upon information and belief, the wrongful acts of Defendant GRAY, individually as alleged in the alternative herein in violation of the Restatement Second of Torts § 876(b) by aiding and abetting retaliatory discharge in violation TPPA and Tennessee common law was intentional and/or were done with knowing and/or reckless disregard of the Plaintiff's rights and the law of Tennessee. Plaintiff is therefore entitled to and seeks an award of punitive damages in an amount according to proof under the TPPA and Tennessee common law.

54. Plaintiff is further entitled to and seeks reasonable attorneys' fees and costs pursuant to the FMLA and the TPPA.

55. Plaintiff further seeks an award of additional funds to compensate her for the adverse tax consequences which she will suffer due to the Defendant's illegal acts preventing her from receiving income and paying taxes on same in a timely fashion over a multiple year period.

56. Plaintiff requests a jury to decide all issues properly triable by jury.

## VII. PRAYER FOR RELIEF

57. Paragraphs 1 through 56 are hereby realleged and incorporated in full by reference as if fully set forth herein.

58. As a result of the conduct and actions of the Defendants herein alleged, Plaintiff has no effective, adequate, or complete remedy at law, because Defendants continue to engage in the wrongful practices alleged herein. Therefore, Plaintiff prays:

    A. That the Court assume jurisdiction of this action and that process issue;

    B. That a permanent injunction be issued enjoining Defendant JEFFERSON OPERATOR, and its agents, employees, officers, and successors in interest, and those acting in concert with them, including Defendants GRAY and NORTHPOINT, from engaging in the illegal and unlawful policies and practices described herein;

    C. That Plaintiff receive a payment of front pay;

    D. That Plaintiff be awarded such amount as may be determined by a jury, for her damages as alleged herein, including but not limited to, lost wages, lost benefits, lost interest on wages and benefits, inconvenience, embarrassment, humiliation, anguish, loss of lifetime

- 12 -

Case 3:13-cv-00200-CLC-HBG Document 1 Filed 04/12/13 Page 12 of 13 PageID #: 12

earning capacity, additional funds to compensate her for adverse tax consequences, and other incidental and consequential damages and expenses;

      E.     That Plaintiff be awarded punitive damages under the TPPA, Tennessee common law, and Restatement Second of Torts;

      F.     For attorneys' fees and costs as cited herein; and,

      G.     For such other and further relief which the Court deems just and proper.

59.    **PLAINTIFF RESPECTFULLY DEMANDS A TRIAL BY JURY.**

Respectfully submitted this  12th  day of April, 2013.

/s/    Link A. Gibbons
Link A. Gibbons, Esq. (BPR #022799)
link@linkgibbonslaw.com

LAW OFFICE OF LINK A. GIBBONS
P.O. Box 2248
Morristown, TN 37816
(423) 839-0990 Phone
(423) 839-1306 Fax

Attorney for Plaintiff